FILED

AUG 2 8 2012

United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-54539-ASW |
| KENNETH S. CHOE AND YONG H. CHOE, | Chapter 7 |
| Debtors. | |
| UNDON PAIK, | |
| Plaintiff, | AP No. 11-05240-ASW |
| vs. | |
| KENNETH S. CHOE AND YONG H. CHOE, | |
| Defendants. | |

**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a motion ("Motion") by Defendants Kenneth and Yong Choe ("Defendants") seeking summary judgment or adjudication on Plaintiff's claims. Plaintiff Undon Paik ("Plaintiff") filed an opposition ("Opposition") to the Motion on July 3, 2012, and Defendants filed a Reply on July 9, 2012. The Motion was set to be heard on July 12, 2012, but because the Opposition was filed after the deadline provided by Bankruptcy

1  Local Rule 7003-1(b), the Court issued an order continuing the

2  hearing to August 28, 2012.

3      Plaintiff is represented by John V. Mejia, Esq.  Defendants

4  are represented by Steven Knuppel, Esq., of the Fuller Law Firm.

5  Upon consideration of the parties' written arguments and evidence,

6  the Court grants Defendants' Motion in part and denies the Motion

7  in part.

8

### Background

9

10      On January 12, 2009, Plaintiff filed a lawsuit against

Defendant Kenneth Choe ("Choe")[1] in Santa Clara County Superior

11  Court, alleging that Choe knowingly took part in a Ponzi scheme

12  that deprived Plaintiff of Plaintiff's savings.  In the state court

13  lawsuit, Plaintiff asserted claims of fraud, negligent

14  misrepresentation, breach of contract, and violations of 18 U.S.C.

15  § 1962(a), (c), and (d) of the Racketeer Influenced and Corrupt

16  Organizations Act ("RICO").  On May 11, 2011, Defendants filed for

17  Chapter 7 bankruptcy.  Plaintiff filed a complaint with this Court,

18  alleging that Choe: (1) made false representations; (2) committed

19  fraud as a fiduciary; (3) committed a willful and malicious injury

20  against Plaintiff; (4) concealed, destroyed, falsified, or failed

21  to keep or preserve any recorded information; and (5) made a false

22  oath when both Defendants swore under penalty of perjury that

23  Defendants provided correct information on Defendants' bankruptcy

24  petition.  Plaintiff argues that as a result, Defendants should be

25  denied a discharge of this specific debt under 11 U.S.C.

26

27     [1] There are no factual issues concerning Yong Choe, Kenneth

28  Choe's spouse, who appears to be named as a Defendant solely
because Yong Choe is a debtor.

MEMORANDUM DECISION GRANTING IN PART
AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1  § 523(a)(2), (4), and (6), and a general discharge under 11 U.S.C.

2  § 727(a)(3) and (4).

4  **Standard of Review**

5  Summary judgment shall be rendered by the Court if the

6  pleadings, depositions, answers to interrogatories, and admissions

7  on file, together with the affidavits, if any, show that there is

8  no genuine issue as to any material fact and that the moving party

9  is entitled to a judgment as a matter of law. Fed. R. Bankr. P.

10 7056 (incorporating Fed. R. Civ. P. 56); Matsushita Elec. Indus.

11 Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 584-85 (1986). All

12 reasonable inferences must be drawn against the moving party.

13 Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); United

14 States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The Court may

15 not weigh the evidence or make credibility determinations. See

16 Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

17 Material facts are those that may affect the outcome of the

18 case. A dispute as to a material fact is genuine if there is

19 sufficient evidence for a reasonable jury to return a verdict for

20 the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S.

21 242, 248 (1986). Because Plaintiff -- not Defendants -- bears the

22 burden of proof at trial, Plaintiff must produce sufficient

23 competent evidence to establish a prima facie claim to avoid

24 summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-

25 23 (1986).

**Material Facts**

Based upon the evidence submitted by the parties, which the Court construes in a light most favorable to Plaintiff, the Court makes the following findings for purposes of this Motion only.

Plaintiff is Korean. Sometime in 2005, representatives of SNC Investments, Inc. and SNC Asset Management, Inc. (collectively referred to as "SNC") began visiting Plaintiff and various other members of the Korean community, promoting investment opportunities in SNC.[2] Plaintiff was initially unsure of whether to invest, and therefore consulted Plaintiff's CPA, Andrew Jean ("Jean"), Choe's brother. Plaintiff had known Jean and Jean's family for several years prior to Plaintiff hiring Jean as Plaintiff's CPA. After talking to Jean, Plaintiff made an initial investment of $50,000 on or about April 7, 2005. Later, according to Plaintiff's answer to Interrogatory 3, attached to Plaintiff's attorney's declaration, Jean encouraged Plaintiff to invest more money. On October 29, 2008, media reports began to surface that SNC was a Ponzi scheme.[3] Plaintiff never received the promised returns on his investments. In fact, according to Plaintiff's response to Interrogatory 11, attached to Plaintiff's attorney's declaration, Plaintiff lost investments in the amount of $615,777.47.

Plaintiff and Defendants dispute Choe's role in SNC. In Plaintiff's declaration, Plaintiff states that Choe was one of the

---

[2] Plaintiff's declaration contains some dating discrepancies. On Page 2, Lines 18-20, Plaintiff states that Choe entered Plaintiff's restaurant in 2005 and convinced Plaintiff to invest. Yet on Page 3, Line 19, Plaintiff states that Choe began visiting Plaintiff's restaurant "in approximately" 2006.

[3] According to the Defendants' motion papers (with no declaration or other evidentiary suport), due to SNC closing its operations, Korean investors were expected to lose $70 million in investments.

MEMORANDUM DECISION GRANTING IN PART
AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                    4

1   members of SNC who made visits to Plaintiff's restaurant and

2   initially encouraged Plaintiff to invest.  Choe told Plaintiff that

3   SNC would produce a higher interest rate than the banks and

4   Plaintiff could withdraw Plaintiff's money at any time.  After

5   Plaintiff invested the first $50,000, Choe -- in addition to Jean -

6   - encouraged Plaintiff to invest more money.  According to

7   Plaintiff, Choe also "targeted" Koreans who were church members and

8   retired.  Plaintiff believes that the entire time, Choe was aware

9   that SNC was a Ponzi scheme.  Plaintiff believed that Choe had this

10   knowledge because Choe routinely spent time with the principals and

11   owners of SNC, playing golf, drinking, and sometimes taking trips

12   to South Korea with them.  Choe was also told by an unspecified

13   individual to leave a meeting for investors who were victims of SNC

14   because Choe was an agent of SNC.  Plaintiff believes that Choe was

15   a fund manager who deposited investors' money in a single bank

16   account and then used the account to pay Choe's personal expenses.

17      In Choe's declaration, Choe denies being a fund manager,

18   having spoken to Plaintiff about investing in SNC, or having

19   received money from Plaintiff.  Choe also denies being an employee

20   or owner of SNC, and states that Choe did not hold any position

21   that would require Choe to keep records of other people who

22   invested.  Choe denies Plaintiff's claim that Choe diverted funds

23   for personal use.  Choe states that Choe did not learn SNC was a

24   Ponzi scheme until October 29, 2008, and also lost money through

25   investments in SNC.

26

27

28

**Analysis**

**A.    11 U.S.C. § 523(a)(2)(A) Fraud Claim**

Under 11 U.S.C. § 523(a)(2)(A), an individual debtor is not discharged from debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  To establish a claim under section 523(a)(2)(A), seven elements must be met: (1) a representation of fact was made by the debtor; (2) that was material; (3) that the debtor knew at the time was false; (4) that debtor made with the intention of deceiving the creditor; (5) upon which the creditor relied; (6) the reliance was reasonable; and (7) damage proximately resulted from the representation.  <u>Siriani v. Northwestern Nat'l Ins. Co. (In re Siriani)</u>, 967 F.2d 302, 304 (9th Cir. 1992).

Defendants argue that Plaintiff cannot prove that Choe's behavior met the first six of these elements.  In his declaration, Choe states that Choe never had any conversations with Plaintiff, or provided Plaintiff with written materials, about investing in SNC.  Choe also states that Choe had no knowledge, prior to October 29, 2008, that SNC was a Ponzi scheme.

Plaintiff argues that Plaintiff has sufficient evidence that Choe's actions fall within section 523(a)(2)(A).  Regarding the first two elements, Plaintiff's declaration states: "I recall [Choe] representing himself as a fund manager to me."  According to Plaintiff, beginning in 2006, Choe came into Plaintiff's restaurant with other members of SNC, where Choe talked about "how good of an investment it was . . . how SNC Investments, Inc. would give me

hire [sic] interest rates than banks, and promising high rates of return and better than bank rates of return, and that I would be able to pull out my money at any time, etc." Regarding the third and fourth elements, Plaintiff relies on circumstantial evidence. Plaintiff states in his declaration that while Plaintiff might lack personal knowledge that Choe knew of the Ponzi scheme, evidence of Choe's relationship with the SNC leadership suggests that Choe was at least aware that SNC was promoting a Ponzi scheme. According to Plaintiff, prior to October 29, 2008, Choe was "usually with principals and owners of SNC Asset Management, Inc.," playing golf and drinking, as well as taking trips with the principals and owners to South Korea. Plaintiff contends that if Choe was aware that SNC was a Ponzi scheme, then Choe's statements to Plaintiff were necessarily intended to deceive Plaintiff as to SNC's true nature.

The Court finds that Plaintiff's evidence on the first four elements is sufficient. Plaintiff's evidence that Choe met regularly with the SNC leadership raises the possibility that Choe understood the true nature of SNC and therefore that Choe knew Choe's alleged representations to Plaintiff were false and Choe sought to deceive Plaintiff.[4]

Defendants argue that even if Plaintiff provided sufficient evidence for elements (1) through (4), Plaintiff has failed to provide evidence for elements (5) and (6): that Plaintiff relied upon these representations and that the reliance was reasonable.

---

[4] Defendants argue in their Reply that Plaintiff failed to provide evidence of how Plaintiff knew of Choe's relationship with SNC, but Defendants' declarations do not provide any facts indicating how Plaintiff could not have known.

1   Attorney Steven T. Knuppel's declaration refers to Plaintiff's
2   response to Interrogatory 23, which states that Plaintiff was
3   "always nervous about his investment" and that Plaintiff had
4   consulted Choe's brother, Andrew Jean, before investing.
5   Defendants argue that this shows that Plaintiff relied upon Jean's
6   representations rather than Choe's.

7       In Plaintiff's declaration, Plaintiff states that Plaintiff
8   relied upon Choe's representations despite feeling reluctant and
9   unsure at first, and that it was "only natural that [Plaintiff]
10  speak with [his] CPA Andrew Jean."  Plaintiff also states that
11  Plaintiff's reliance was reasonable because Plaintiff had known
12  Jean and Jean's family for several years prior to Plaintiff hiring
13  Jean as Plaintiff's CPA.

14      The Court finds that Plaintiff's proffered evidence is
15  sufficient to demonstrate genuine disputes of fact on this claim.
16  Plaintiff has provided evidence that Choe may have known about
17  SNC's Ponzi scheme and that Plaintiff may have reasonably relied,
18  at least in part, on Choe's representations intended to induce
19  Plaintiff to invest.  The Court therefore denies Defendants' Motion
20  on this claim.

21

22      **B.   11 U.S.C. § 523(a)(4) Fraud as a Fiduciary Claim**

23      The next issue is whether Plaintiff has provided sufficient
24  evidence that Choe committed fraud while acting as a fiduciary.
25  Under 11 U.S.C. § 523(a)(4), an individual debtor is not discharged
26  from debt "for fraud or defalcation while acting in a fiduciary
27  capacity, embezzlement, or larceny."

28

In order to establish that Choe committed fraud in a fiduciary capacity, Plaintiff must first provide evidence that Choe was a fiduciary of SNC. However, a "fiduciary" in the context of section 523(a)(4) is different from the broad definition used in the nonbankruptcy context -- a relationship involving trust, confidence, and good faith. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (B.A.P. 9th Cir. 2011). A fiduciary relationship under section 523(a)(4) must arise from "an express or technical trust that was imposed before, and without reference to, the wrongdoing that caused the debt as opposed to a trust ex maleficio, constructively imposed because of the act of wrongdoing from which the debt arose." Id. at 378-79 (citing Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986)). A narrow definition of fiduciary "is consistent with the policy of construing the exceptions to discharge in § 523 strictly against the objecting creditor and liberally in favor of the debtor." Id. at 379 n.5. While the scope of the term "fiduciary duty" is federal in nature, the Ninth Circuit has looked to state law -- in this case, California -- to determine whether a trust relationship exists. Id. at 379. Trusts that arise "as remedial devices to breaches of implied or express contracts -- such as resulting or constructive trusts -- are excluded, while statutory trusts that bear the hallmarks of an express trust are not." Id.

Under California law, an express trust arises when five elements are present: (1) intent to create a trust,[5] (2) trustee,

---

[5] Under California Civil Code section 15201, a trust exists only if the settlor manifests intent to create a trust. Cal. Civ. Code § 15201.

1  (3) trust property, (4) a proper legal purpose,[6] and (5) a

2  beneficiary.  Id. at 379 n.6.  A technical trust arises "from the

3  relationship of attorney, executor, or guardian, and not to debts

4  due by a bankrupt in the character of an agent, factor, commission

5  merchant, and the like."  Id. at 379 n.7.

6      Defendants argue that Plaintiff has not provided sufficient

7  evidence that Choe was a fiduciary under section 523(a)(4).  Choe

8  states in his declaration that he was not a fund manager, employee,

9  or owner of SNC and held no position requiring Choe to keep records

10  of other people.  Plaintiff argues that Choe's disputed position as

11  a fund manager meant that Choe was acting as a fiduciary.

12  Plaintiff cites several California cases in making his argument.

13  See Assilzadeh v. California Federal Bank, 82 Cal. App. 4th 399

14  (2000); Michelson v. Hamada, 29 Cal. App. 4th 1566 (1994); Youman

15  v. Equifax, Inc., 111 Cal. App. 3d 498 (1980).  However, none of

16  the cases on which Plaintiff relies involved bankruptcy.  As such,

17  the fiduciary relationship referred to by Plaintiff is the broad

18  definition of fiduciary rather than the definition supplied in

19  Honkanen for section 523(a)(4).  See Assilzadeh, 82 Cal. App. 4th

20  at 414 (stating that a broker's fiduciary duty to his clients

21  requires "the highest good faith and undivided service and

22  loyalty"); Michelson, 29 Cal. App. 4th at 1581 ("Confidential and

23  fiduciary relations are, in law, synonymous, and may be said to

24  exist whenever trust and confidence is reposed by one person in the

25  integrity and fidelity of another."); Youman, 111 Cal. App. 3d at

26  ─────────────
   [6]  Under California Civil Code section 15203, a "proper legal
   purpose" is one that is not illegal or against public policy.  Cal.
27  Civ. Code § 15203.

28

MEMORANDUM DECISION GRANTING IN PART
AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

517 (noting that a fiduciary relationship is one involving
confidence).

Plaintiff has not provided sufficient evidence that Choe was a
fiduciary for purposes of section 523(a)(4). First, Plaintiff has
provided no evidence that a fiduciary relationship arose from a
technical trust as defined by <u>Honkanen</u>. A technical trust arises
"from the relationship of attorney, executor, or guardian."
<u>Honkanen</u>, 446 B.R. at 379 n.7. Choe is described as a fund
manager, not an attorney, executor, or guardian. Plaintiff has
also provided no evidence that his relationship with Choe held the
same weight and importance as an attorney-client relationship.

Finally, Plaintiff has provided no evidence of an express
trust relationship. Plaintiff's declaration does demonstrate that
Choe, if he was a fund manager, would be a trustee, with control
over investors' funds, the trust property. In addition, the trust
would have had a beneficiary, whether the investors or the SNC
executives. However, Plaintiff has provided no evidence that SNC
ever had a proper legal purpose, or that there was ever an intent
to create a trust. To the contrary, Plaintiff contends that SNC
had an illegal purpose -- the Ponzi scheme. Therefore, Plaintiff
has not provided sufficient evidence of an express trust. Since
Plaintiff not provided evidence that Choe was a fiduciary under
section 523(a)(4), the Court grants Defendants' Motion on this
claim.

**C.   11 U.S.C. § 523(a)(6) Willful and Malicious Injury Claim**

Next, the Court considers whether Plaintiff has produced
evidence of a willful and malicious injury. Under 11 U.S.C.

1  § 523(a)(6), an individual debtor is not discharged from a debt

2  resulting from "willful and malicious injury by the debtor to

3  another entity or to the property of another entity."

4      These are two separate requirements -- the injury must be both

5  willful and malicious.  Barboza v. New Form, Inc. (In re Barboza),

6  545 F.3d 702, 706 (9th Cir. 2008).  To be willful, an injury must

7  be deliberate or intentional.  Id. at 707-08.  Reckless conduct

8  does not meet this standard.  Id.  Rather, the debtor must have

9  intended the consequences of the debtor's actions -- specifically,

10  the debtor must have had a subjective motive to inflict injury or

11  have a belief that injury is substantially certain to result from

12  the conduct.  Suarez v. Barrett (In re Suarez), 400 B.R. 732, 736-

13  37 (B.A.P. 9th Cir. 2009); see also Su v. Su (In re Su), 290 F.3d

14  1140, 1142 (9th Cir. 2002).  In addition, a deliberate or

15  intentional act which merely leads to injury is not a willful

16  injury.  Barboza, 545 F.3d at 706.  To be malicious, the injury

17  must involve: (1) a wrongful act (2) which is done intentionally,

18  (3) which necessarily causes injury, and (4) which is done without

19  just cause or excuse.  Id.

20      The Plaintiff carries the burden of proof on this claim.

21  Suarez, 400 B.R. at 736.  Therefore, the Court looks to see whether

22  Plaintiff has supported both the willful and malicious elements of

23  this claim with sufficient evidence.

24      Neither party disputes that Plaintiff was injured.  Plaintiff

25  invested more than once in SNC, and as a result, lost a substantial

26  amount of money.  According to Plaintiff's response to

27  Interrogatory 11, attached to Plaintiff's attorney's declaration,

28  Plaintiff lost $615,777.47.  While Defendants argue that Plaintiff

has no evidence that Choe subjectively intended to injure
Plaintiff, as the Court noted above, Plaintiff's evidence that Choe
was a fund manager who spent significant time with the SNC
leadership raises a question of fact as to whether Choe knew about
the Ponzi scheme.  If Choe knew of the Ponzi scheme, and encouraged
Plaintiff to invest, that suggests that Choe knew that by
encouraging Plaintiff to invest, Plaintiff was substantially
certain to lose that investment.  For these reasons, Choe's alleged
conduct satisfies the "willful injury" standard.

There is also evidence that Choe maliciously injured
Plaintiff.  If Choe knew of the Ponzi scheme, then by encouraging
Plaintiff to invest, Choe would have intentionally committed a
wrongful act, without just cause or excuse.  This act necessarily
injured Plaintiff by forcing Plaintiff to lose his savings.
Because Plaintiff has provided enough evidence to support this
claim, the Court denies Defendants' Motion to dismiss as to this
claim.

**D.    11 U.S.C. § 727 Claims**

Plaintiff admits in Plaintiff's Opposition that Plaintiff has
not conducted sufficient discovery to provide evidence that Choe
failed to keep, or destroyed, records under 11 U.S.C. § 727(a)(3),
or that Choe made a false oath or account under 11 U.S.C.
§ 727(a)(4).  Plaintiff requests that the Court permit Plaintiff
more time to conduct discovery under Federal Rule of Civil
Procedure 56(d)(1) or (d)(2) (incorporated by Federal Rule of
Bankruptcy Procedure 7056).

Rule 56(d)(1) and (d)(2) provide: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; or (2) allow time to obtain affidavits or declarations or to take discovery." At the same time, Federal Rule of Civil Procedure "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998). A trial court judge may limit the frequency or extent of use of discovery methods if the court determines "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Id. at 599.

Here, Plaintiff and Defendant had four months to conduct discovery between the time Plaintiff filed the First Amended Complaint on February 16, 2012, and the time Defendants filed the current Motion on June 12, 2012. Plaintiff's attorney admits in his declaration that Plaintiff's attorney has been unable to conduct discovery due to his "heavy schedule" and that is "no excuse." The Court notes that no discovery deadline has been set because the Case Management Conference is on hold pending the outcome of this Motion. Therefore, the discovery period is still open, which would enable Plaintiff to continue gathering the necessary documents to support Plaintiff's 727 claims. However, given that Plaintiff has had four months since the filing of the First Amended Complaint, and more than one year since Plaintiff

1  filed the original Complaint, and given that Plaintiff has no valid

2  excuse for the lack of discovery, the Court finds that granting

3  Plaintiff extended time would cause an undue burden and unnecessary

4  delay.  The Court therefore grants Defendants' Motion on both

5  claims.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM DECISION GRANTING IN PART
AND DENYING IN PART DEFENDANT'S

MOTION FOR SUMMARY JUDGMENT

**Conclusion**

    The Motion is denied with respect to Plaintiff's claims that Defendants' debt should not be discharged under section 523(a)(2) and (a)(6). The Motion is granted on Plaintiff's claims seeking to deny a discharge under sections 523(a)(4) and 727.

    IT IS SO ORDERED.

Dated: August 28, 2012

                            ARTHUR S. WEISSBRODT
                            UNITED STATES BANKRUPTCY JUDGE

```
1    Court Service List

2    Court Service List
     Kenneth S. Choe &
3    Yong H. Choe
     2122 Shadow Ridge Way
4    San Jose, CA 95138

5    Lars T. Fuller
     Saman Taherian
6    Steven Knuppel
     The Fuller Law Firm
7    60 N Keeble Ave.
     San Jose, CA 95126
8
     John V. Mejia
9    Law Offices of John V. Mejia
     2450 Stanwell Drive
10   Concord, CA 94520

11   Carol Wu
     Chapter 7 Trustee
12   25A Crescent Dr. #413
     Pleasant Hill, CA 94523
13
     Office of the U.S. Trustee / SJ
14   U.S. Federal Bldg.
     280 S 1st St. #268
15   San Jose, CA 95113-3004

16

17

18

19

20

21

22

23

24

25

26

27

28
```